**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0782n.06

No. 11-4028

**FILED**
*Jul 18, 2012*
LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LUANNE P. MANN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| NAVICOR GROUP, LLC; INVENTIV | ) | |
| HEALTH, INC., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: SILER and KETHLEDGE, Circuit Judges; MURPHY, District Judge.[*]

PER CURIAM. Luanne P. Mann appeals the district court's grant of summary judgment in favor of Navicor Group, LLC, and inVentiv Health, Inc., in this action alleging employment discrimination. For the following reasons, we AFFIRM.

**I.**

Mann began working for Navicor, a healthcare advertising agency, as a senior art director in November 2006. As early as January 2007, Creative Director Marvin Bowe received complaints about Mann from her team members and began to document her performance issues. On February 2, 2007, Bowe placed Mann on a performance improvement plan, and demoted her from senior art director to art director with a corresponding reduction in salary. Bowe also assigned Mann to a new creative team, the Tarceva team, reporting to Associate Creative Director Keith Flint.

---

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

Mann described her initial working relationship with Flint and the rest of the Tarceva team as "great" and expressed that she "truely [sic] enjoy[ed] working with them." In Mann's July 2007 performance evaluation, Flint assessed her overall performance as "exceptional," the highest rating. Flint eventually felt that Mann deserved her title and salary back and said that he would do what he could to help her. Mann's title and salary were restored on July 31, 2007.

In late 2007, members of the Tarceva team raised concerns about Flint's mistreatment of them. Mann reported to Vice President of Human Resources Venice Herring that Flint "was treating women poorly and we felt uncomfortable asking questions in meetings that we felt were important." In response to the complaints about Flint, Bowe called a meeting with the Tarceva creative team, without Flint, and requested written statements from them. In this meeting, Mann and the two other female team members were "very specific about how we noticed that women were treated differently, and John [Catania, the only male team member,] pointed out that he noticed the treatment that was going on and he himself hadn't experienced any of it." According to Bowe, the team members came to a consensus as to three issues with Flint's management: (1) his short temper, (2) his negative attitude, and (3) his sarcastic and degrading remarks. After meeting with the team, Bowe conducted an investigation and involved Herring and President Garnett Dezember. Management ultimately concluded that the evidence did not suggest that Flint's conduct was gender specific.

On January 4, 2008, Bowe, Herring, and Dezember met with Flint about his team's concerns and verbally reprimanded him. When management reported back to the team members about the outcome of the meeting with Flint, Dezember offered them the opportunity to transfer to another team, but no one wanted to transfer. Bowe began to monitor Flint's conduct by attending the

Tarceva team meetings and became more involved in team oversight. Bowe also altered the team's reporting structure by promoting Catania to group art supervisor to serve as a "buffer" between Mann and Flint.

In late June or early July 2008, Dezember directed Bowe "to look at making adjustments on the creative side to help meet financial goals regarding profitability expectations and efficiency." Bowe had already been working on a plan to restructure the creative department "[t]o create a more efficient structure that could expand over time" and to better align "talent to task." Bowe identified three individuals, including Mann, for termination. From his own personal assessment of Mann's talents, Bowe determined that she was lacking in the production area and that "[t]he work that she excelled on and I commended her on was less than 20 percent of our business."

In the meantime, Mann learned that her mother would need to undergo chemotherapy and discussed taking leave to care for her with Catania and Angie Lewis in the human resources department. On July 15, 2008, Mann submitted a leave of absence request form seeking eleven weeks of leave. Bowe became aware of Mann's leave request on the same day he has preparing for her termination. Bowe and Dezember decided to increase Mann's offer of severance pay from the standard two weeks to eleven weeks, due to her personal circumstances. On July 16, 2008, Bowe and Herring met with Mann and terminated her employment.

Mann subsequently filed this lawsuit against Navicor and inVentiv Health,[1] alleging gender discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 and 2000e-3, and the Ohio Civil Rights Act, Ohio Rev. Code § 4112.02, and retaliation and interference in violation of the Family and Medical Leave Act

---

[1]InVentiv Health is the parent company of four independently managed companies, including inVentiv Communications Inc., which is the parent company of Navicor.

(FMLA), 29 U.S.C. § 2615. Following extensive discovery, the defendants filed motions for summary judgment, which the district court granted. This timely appeal followed.

## II.

We review de novo the district court's decision to grant summary judgment in favor of the defendants. *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 723 (6th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A. Gender Discrimination

Mann claims that her gender was a factor in Navicor's decision to terminate her employment. According to Mann, she can prove her claim with both direct and circumstantial evidence of gender discrimination.

"Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). To constitute evidence of discrimination, a discriminatory statement must have been made by a decisionmaker related to the decisional process. *Geiger v. Tower Auto.*, 579 F.3d 614, 620-21 (6th

Cir. 2009) ("'Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus.'" (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 364 (6th Cir. 1998))). The statements upon which Mann relies as direct evidence of gender discrimination were neither made by Bowe, the decisionmaker, nor related to the termination decision.

Absent direct evidence, Mann must demonstrate a prima facie case of gender discrimination through circumstantial evidence: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). The district court held that Mann failed to establish a prima facie case because Catania, the male employee with whom she sought to compare herself, was not similarly situated. "[T]o be considered 'similarly-situated' . . . , the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). Catania and Mann were not similarly situated in "all of the relevant aspects"; Catania, after he was promoted to group art supervisor, was Mann's supervisor. Mann contends that Catania was a supervisor in name only, but her actions demonstrate that she viewed him as her supervisor. For example, she discussed her need for FMLA leave with Catania and had him sign her leave of absence request form as her supervisor.

Furthermore, the district court found that Mann failed to present evidence that Navicor's stated reason for her termination was a pretext for gender discrimination. Asserting that Navicor

changed its rationale for her termination over time, Mann engages in semantic nitpicking and relies on speculative statements by persons not involved in the termination process to make her argument. In reality, Navicor's reason for Mann's termination has remained the same—Bowe, in restructuring the creative department to make it more efficient and to better align "talent to task," determined that Mann's talents in conceptual design work did not align with the production work comprising the majority of the work that art directors perform at Navicor. The district court properly granted summary judgment in favor of the defendants for this additional reason.

Citing the "cat's paw" theory of liability recognized in *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011), Mann argues that Flint influenced Bowe's decision to terminate her employment. In support of this argument, Mann relies on a May 22, 2008, email from Flint to Bowe about issues with another team member, Cat Spath, in which Mann was referenced only parenthetically. This vague reference is insufficient to create an issue of fact as to whether Flint influenced the termination decision.

### B. Sexual Harassment

Mann claims that Flint subjected her to unwelcome sexual harassment. Actionable harassment occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). "Both an objective and subjective test must be met; in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).

In determining whether a working environment is hostile or abusive, we look "at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

In support of her hostile work environment claim, Mann asserts that Flint asked her to leave her partner on "countless" occasions, beginning approximately three months after she joined the Tarceva team until she asked him to stop shortly before she went to Greece with her partner on July 1, 2007. Flint also suggested that Mann "ditch" her partner and take him on the trip to Greece instead. When Mann showed Flint a diamond ring that her partner had given her for their anniversary, he angrily commented, "I guess that means we'll never be together," and stormed off. On another occasion, Flint approached Mann where she stood with Spath near the elevators, zipped and unzipped Mann's hooded sweatshirt, and then walked off. Flint once called Mann into his office, shut the door, and told her a joke "about an overweight black woman that worked at a Wal-Mart" and "something about a penis and her manager." When Flint appeared to be in a bad mood, Mann asked him if he was all right, and he responded that "he was lonely" and that "he wanted to be dating somebody." Mann said that she thought he was dating someone, and Flint responded that the woman he was seeing was not his type, and that he preferred women who do not shave or bathe and "have a strong smell."

Considering Mann's allegations as a whole, we agree with the district court that Flint's alleged conduct was not so severe or pervasive that a reasonable person would find the working environment hostile or abusive. With the exception of Flint's comments about leaving her partner, which Mann conceded were made "in a way that came across as jovial" and ceased when she asked

him to stop, Mann complains about four discrete and isolated incidents, only one of which involved any physical contact. This evidence is insufficient to establish Mann's claim. *See Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (holding that the purported harassment was not sufficiently severe or pervasive where the plaintiff claimed that the alleged harasser "told vulgar jokes, . . . twice placed his vibrating pager on her thigh as he passed her in the hall, and . . . pulled at her overalls after she told him she was wearing a thong"). The district court properly granted summary judgment in favor of the defendants on Mann's sexual harassment claim.

C.      **Retaliation**

Mann alleges that Navicor terminated her in retaliation for her complaints about Flint's gender discrimination and sexual harassment. To establish a prima facie case of retaliation, Mann must demonstrate that: (1) she engaged in protected activity; (2) Navicor knew of her exercise of protected rights; (3) Navicor subsequently took an adverse employment action against her; and (4) there was a causal connection between her protected activity and the adverse employment action. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009). Assuming that Mann's complaints about Flint constituted protected activity, we find that her prima facie case fails because there is no evidence of a causal connection between her complaints and her termination. Where, as here, "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). As evidence of retaliatory conduct, Mann again relies on the May 22, 2008, email from Flint to Bowe which references her only parenthetically. As we stated above, this vague reference is insufficient to create a genuine dispute of material fact. Moreover, Spath, who also complained that

Flint treated women differently, was not selected by Bowe for termination, further undermining Mann's theory. Because Mann failed to demonstrate a prima facie case of retaliation, summary judgment on her retaliation claim was appropriate.

### D.     FMLA

Mann asserts both retaliation and interference claims under the FMLA. To establish a prima facie case of FMLA retaliation, Mann must show that: (1) she was engaged in an activity protected by the FMLA; (2) Navicor knew that she was exercising her rights under the FMLA; (3) after learning of her exercise of FMLA rights, Navicor took an employment action adverse to her; and (4) there was a causal connection between her protected FMLA activity and the adverse employment action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). We agree with the district court that Mann failed to demonstrate a causal connection. There is no evidence indicating that Bowe was aware of Mann's intent to request FMLA leave when he made the decision to terminate her employment.

Mann's interference claim likewise fails. To establish a prima facie case of FMLA interference, Mann must show that: (1) she was an eligible employee under the FMLA; (2) Navicor is an employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave Navicor notice of her intent to take leave; and (5) Navicor denied her FMLA benefits to which she was entitled. *Donald*, 667 F.3d at 761. We have noted that:

> "[A]n employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request." An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.

*Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (citation omitted) (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)). Bowe's decision to terminate Mann's employment was unrelated to her request for FMLA leave, given that there is no evidence that he was aware of her intent to request FMLA leave when he made the termination decision. Mann's request for FMLA leave does not shield her from the previously-made decision to terminate her employment.

### E. inVentiv Health

InVentiv Health moved for summary judgment on the basis that it was never Mann's "employer." The district court properly found that inVentiv Health was entitled to summary judgment, even if it could be considered Mann's "employer," because Navicor was entitled to summary judgment.

### III.

Accordingly, we AFFIRM the district court's grant of summary judgment in favor of the defendants.